IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MONEKE THOMAS,** : | |
| Plaintiff, : | |
| : | CIVIL ACTION |
| v. : | NO. 11-0224 |
| : | |
| **PHILADELPHIA HOUSING AUTHORITY** : | |
| **and CARL GREENE** (individually and in : | |
| his official capacity), : | |
| Defendants. : | |

**MEMORANDUM OPINION & ORDER**

**RUFE, J.** August 30, 2011

Plaintiff Moneke Thomas, a former employee of the Philadelphia Housing Authority ("PHA"), brings claims under 42 U.S.C. § 1983 and state tort law against the PHA and its former executive director Carl Greene, in his official and individual capacity. Before the Court is Defendant Greene's Motion to Dismiss Thomas's claims against him pursuant to Federal Rule of Civil Procedure 12(b)(6) [doc. no. 11].[1] For the following reasons, Greene's motion is granted.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

Moneke Thomas worked as a Senior Management Specialist for the PHA in March 2007.[2] Defendant Carl Greene was the executive director of that agency from March 1998 until September 2010. In February 2008, Plaintiff filed a discrimination charge with the United States Equal Opportunity Employment Commission ("EEOC") and the Pennsylvania Human Relations

---

[1] This Court has original jurisdiction over Plaintiff's federal law claim brought under 42 U.S.C. § 1983 (Count I), pursuant to 28 U.S.C. §§ 1331 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims for intentional interference with contractual relations and intentional infliction of emotional distress (Counts III and IV), pursuant to 28 U.S.C. § 1367.

[2] Compl. ¶ 9.

Commission ("PHRC") alleging that Greene retaliated against her and sexually harassed her.[3] The matter settled in June 2008.[4] At some point thereafter, Plaintiff left the PHA's service.[5]

Plaintiff then experienced the following acts, which she asserts were "done by PHA, former PHA employees, and Carl Greene:"[6] in June 2008, Plaintiff became aware that unnamed PHA employees were following her and were present at restaurants and other facilities she frequented; in August 2008, she saw Michael Williams, a former PHA inspector,[7] following her in a black Nissan Maxima; at an October 2008 function she saw a former PHA employee whom Thomas had fired while at PHA, and was later told by Greene that this employee planned to "beat up Plaintiff;" in November 2008, she again saw Williams following her in his vehicle; in August 2009, two months after Thomas had moved to a gated community for safety purposes, Thomas was attempting to enter her gated community in her vehicle when she was forced to stop because Williams's car was stopped in the middle of the street while Williams spoke to a local police officer; in September 2009, someone dumped a pile of dirt and leaves in front of her garage; in October 2009, someone tipped over the flower pots in front of her home; and in December 2009,

---

[3] Compl. ¶ 10.

[4] Compl. ¶ 11.

[5] Thomas does not indicate when she left the PHA's service, and whether any, or how many, of the acts alleged in the Complaint occurred while she was still employed by PHA. Greene asserts in briefing that the settlement agreement included a provision that Thomas would leave PHA, but Plaintiff does not so allege in her Complaint. Consequently, the Court cannot determine whether the alleged acts occurred during or after Thomas's employment with the PHA.

[6] Compl. ¶ 26.

[7] Thomas does not allege when Williams left the PHA. She describes him as a former PHA inspector at the time he followed her in August 2008.

Williams pulled up beside her in his car, called her name and gave her a threatening look.[8]

Thomas alleges that Greene, PHA employees and the PHA violated her First Amendment rights because they undertook these actions to intimidate her so that she would not reveal information about Greene's unidentified "fraudulent actions;" to retaliate against her for filing her EEOC/PHRC charge; and to discourage others from speaking out about Greene and the PHA's misconduct.[9]  In particular, Thomas alleges that Greene "instigated and condoned" these retaliatory actions.[10]

In addition, Thomas alleges interference with her contractual relations.  In April 2009, when Thomas was working for a local attorney, the attorney received a call from a PHA manager who asked to visit the office to discuss an issue.  Thomas, fearing for her safety, left that position.[11]  In May 2009, Plaintiff found her mail had been tampered with, including a letter from the Department of Labor and Industry.[12]  That same month, Thomas had interviewed for a position in New Jersey, but was told by the prospective employer that she would not be hired "because she was causing a big problem."[13]  Thomas alleges, based on these facts, that "Defendants took purposeful action" to interfere with her relations with prospective employers.[14]

---

[8] Compl. ¶¶ 13–16, 20–23.

[9] Compl. ¶¶ 26, 42.

[10] Compl. ¶ 42.

[11] Compl. ¶ 17.

[12] Compl. ¶ 18.

[13] Compl. ¶ 19.

[14] Compl. ¶ 57.

Thomas filed her Complaint in this Court on January 13, 2011.[15]  Count I, brought pursuant to 42 U.S.C. § 1983, alleges that the PHA and Greene, in his individual and official capacity, violated Thomas's First Amendment rights.  Count II alleges that the PHA negligently hired and retained Greene.  Count III alleges that the PHA and Greene, in his individual and official capacity, intentionally interfered with her contractual employment relations.  And Count IV alleges intentional infliction of emotional distress against both the PHA and Greene, in his individual and official capacity.[16]

The PHA moved to dismiss Counts II and III against it, and to dismiss claims for punitive damages as against PHA.[17]  Plaintiff subsequently withdrew those claims as against the PHA

---

[15] In her briefing, Thomas alleges additional facts regarding Greene's wrongdoing prior to and during his tenure at PHA.  Pl.'s Mem. of Law in Supp. of Pl.'s Ans. to Def. Carl Greene's Mot. to Dismiss ("Pl.'s Opp'n") [doc. no. 14] at 1–2, 8–9, 13; Pl.'s Sur-reply to Def. Greene's Reply Br. to Pl.'s Resp. to Def. Greene's Mot. to Dismiss [doc. no. 22] at 2–3.  These allegations were not contained in her Complaint, and Thomas cannot amend her Complaint with facts alleged in her opposition papers.  Commonwealth of Pa. ex. rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir.1988) ("'[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'") (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)).  Thus, the Court cannot consider the facts alleged in Thomas's motion papers in evaluating the sufficiency of her Complaint.  Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.").

In addition, Thomas asks this Court to take judicial notice of "the wrongdoings by Greene and the PHA" because "those things are so well known."  Pl.'s Opp'n at 8.  This Court can take judicial notice of "an adjudicative fact if that fact is not subject to reasonable dispute." Werner v. Werner, 267 F.3d 288, 295 (3d Cir. 2001) (citing Fed. R. Evid. 201(b)). Such documents include matters of public record, including prior judicial opinions and proceedings.  McTernan v. City of York, Pa.. 577 F.3d 521, 526 (3d Cir. 2009).  Plaintiff, however, fails to designate any specific document or noticeable fact of which the Court can take notice.  The Court cannot take judicial notice of "things" based on an unsupported assertion that they are "so well-known."  Accordingly, for purposes of the pending motion to dismiss, the Court considers only those facts alleged in the Complaint.

[16] The PHA has not moved to dismiss Counts I or IV as against the PHA.

[17] Doc. no. 9.

only;[18] thus, only the Section 1983 and intentional infliction of emotional distress claims remain against PHA (Counts I and IV).

Greene then moved to dismiss the claims against him (Counts I, III and IV).  Greene argues Count I must be dismissed because: (1) Thomas's claim is time-barred; (2) she has not alleged she engaged in protected speech; (3) Thomas cannot bring a First Amendment claim for post-employment retaliation; (4) Thomas has not pleaded facts suggesting a connection between the speech and the retaliatory acts, nor facts connecting Greene to those acts; and (5) Greene is qualifiedly immune.  Greene argues Counts III and IV must be dismissed because Thomas fails to allege facts sufficient to state those tort claims, and because intentional tort claims against him as a Commonwealth party are barred by sovereign immunity.

## II. STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the Court must accept a plaintiff's factual allegations as true and construe the complaint in the light most favorable to the Plaintiff.[19]  But courts are not bound to accept as true legal conclusions couched as factual allegations,[20] or "accept as true unsupported conclusions and unwarranted inferences."[21]  The Complaint must set forth "direct or inferential allegations [for] all the material elements necessary to sustain recovery under some viable legal

---

[18] Doc. no. 10.  Counts II and III against the PHA were then dismissed as withdrawn [doc. no. 12].

[19] Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

[20] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).

[21] Schuylkill Energy Res., Inc. v. Pa. Power & Light Co., 113 F.3d 405, 417 (3d Cir.), cert. denied, 522 U.S. 977 (1997).

theory."[22] And it must allege "enough facts to state a claim for relief that is plausible on its face."[23] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that the defendant acted unlawfully."[24]

### III. DISCUSSION

#### A. Count I: Section 1983 Claim

Thomas brings a Section 1983 claim against Greene in his individual and official capacity. Under 42 U.S.C. § 1983, plaintiffs may seek relief against anyone who, under color of state law, deprives them of rights, privileges, or immunities secured by the Constitution and federal laws.[25] A First Amendment retaliation claim under Section 1983 "must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action."[26]

Here, Thomas alleges that Greene violated her First Amendment rights because he "instigated or condoned" the aforementioned "campaign" of harassment to retaliate against her for filing the EEOC/PHRC complaint and to deter her from speaking out about "other

---

[22] See Twombly, 550 U.S. at 562 (citations and quotations omitted).

[23] Id. at 570.

[24] Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

[25] Sabree v. Richman, 367 F.3d 180, 181 n.2 (3d Cir. 2004) (internal citations and quotations omitted).

[26] Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006); see also Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997).

wrongdoing by Carl Greene and PHA of which Plaintiff was aware."[27] Additionally, Plaintiff alleges that Greene, in his official capacity as a "decision-maker:" continued or condoned a long-standing policy, practice and custom of violating employees and former employees' First Amendment rights; retaliating against them for exercising their First Amendment rights; and failing to adequately discipline, train, direct or sanction PHA employees causing the unlawful conduct alleged.[28]

Greene bases his motion to dismiss the Section 1983 claim, in part, on two arguments that are easily dispatched. First, Greene argues that Thomas has failed to state a claim because the speech at issue—Plaintiff's filing of an EEOC complaint—is not protected.[29] The Court disagrees. The First Amendment protects the filing of EEOC charges and related lawsuits by public employees, even if the issue underlying the complaint is not a matter of "public concern."[30] Second, Greene argues, without authority,[31] that Thomas cannot bring a retaliation

---

[27] Compl. ¶¶ 39, 42. Thomas also alleges that this campaign was intended to prevent others from reporting misconduct. Compl. ¶ 26(c). But Thomas does not have standing to bring a First Amendment claim on behalf of others. See Warth v. Seldin, 422 U.S. 490, 509 (975) (noting litigants ordinarily may not assert the rights or legal interests of others in order to obtain relief from injury to themselves).

[28] Compl. ¶¶ 35–38.

[29] Mem. of Law in Support of Mot. of Def. Carl Greene to Dismiss Pl.'s Compl. at 8–9.

[30] See Anderson, 125 F.3d at 161 (the filing of an EEOC charge and subsequent lawsuit "constitute[s] protected activity under the First Amendment") (citing inter alia Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972)); Roberts v. Pa. Dep't of Pub. Welfare, 199 F. Supp. 2d 249, 252 (E.D. Pa. 2002) ("The First Amendment right to petition protects the filing of EEOC and other administrative charges and applies even though the issue does not refer to a matter of public concern."); Rivera O'Bryant v. City of Reading, No. 03-6635, 2005 WL 1971882, at *9 (E.D. Pa. Aug. 11, 2005) ("[P]laintiff's filing of complaints with the PHRC and the EEOC in this case constitutes a protected activity.").

Defendant relies on Zelinski v. Pa. State Police, 108 F. App'x 700 (3d Cir. 2004), as support for the proposition that an EEOC charge is not protected speech. That case is both non-precedential and inapposite. There the speech was an "informal conversation" with a supervisor about a non-supervisory

claim for retaliatory acts occurring after Thomas left the PHA.  Again, the Court disagrees.  The Third Circuit has considered Section 1983 actions based on retaliatory conduct by government officials that occurred after government employment ceased.[32]

Nonetheless, for the reasons that follow, Thomas's Section 1983 claim must be dismissed because of the Complaint's significant pleading deficiencies.

### 1. *Individual Capacity Claim*

First, Thomas's First Amendment retaliation claim against Greene in his individual capacity is deficient because she has not alleged facts sufficient to infer his personal involvement in the alleged retaliation nor facts supporting a causal connection between the protected speech and the retaliation.  To state a Section 1983 claim against a government official in his individual capacity, a plaintiff must allege the official's "personal involvement in the alleged wrongdoing,"

---

co-worker's improper advances, for which the plaintiff did not seek official action.  Id. at 708.

Moreover, Thomas alleges that Greene instigated the harassment to prevent Thomas from speaking out about other "wrongdoing."  Though Thomas has not sufficiently pleaded facts to make this allegation plausible because the Complaint does not identify what "wrongdoing" Plaintiff knew of, the Court notes that "[d]isclosing corruption, fraud, and illegality in a government agency is a matter of significant public concern," Feldman v. Phila. Hous. Auth., 43 F.3d 823, 829 (3d Cir. 1994), and the right to "speak to the . . . public regarding government corruption and illegality is clearly established," Neuberger v. Gordon, 567 F. Supp. 2d 622, 642 (D. Del. 2008) (citing Mills v. State of Ala., 384 U.S. 214, 218 (1966)).

[31]  The single case cited by Defendant, Lewis v. Del. Dep't of Pub. Instruction, 986 F. Supp. 848 (D. Del. 1997), is inapposite.  There the court rejected a Section 1983 post-employment retaliation claim because it interpreted the claim as alleging defamation that deprived the plaintiff of his property interest.  The court concluded that because the property interest at issue was the right to continued employment, there was no violation where the defamatory comment was made post-employment.  Id. at 858.

[32]  See Anderson, 125 F.3d at 152–53, 162–63 (permitting § 1983 First Amendment claim for post-employment harassment in retaliation for plaintiff's filing of EEOC charge and subsequent lawsuit).

because there is no respondeat superior liability in individual capacity suits.[33]  Thus, a plaintiff must allege facts to support an inference that the conduct was personally directed by the official, or that the official had actual knowledge of the conduct and acquiesced to it.[34]  Here, Thomas, though alleging a series of harassing acts by certain individuals (named and unnamed), has not alleged sufficient facts from which it can be inferred that Greene personally directed the conduct or knew of and condoned or acquiesced to it.  Plaintiff alleges that *former* PHA employee Michael Williams followed her in his automobile on multiple occasions and made threatening facial expressions, but does not plead facts from which the Court can infer that Greene directed, or could have directed, a former employee to follow Thomas.  Further, Thomas has pleaded no facts from which the Court can conclude that Greene directed the acts of other unidentified perpetrators of other allegedly harassing acts—the phone call to her new employer, the vandalism of her home, the tampering with her mail, and the appearances at restaurants that Thomas frequented.  Merely identifying these individuals vaguely as "agents, servants, workers, and former and present employees of Defendant" or as "a PHA manager" is not sufficient to infer that Greene directed, knew of, or acquiesced to their conduct.  And the Court cannot, without more, accept as true Thomas's sole conclusory allegation that Greene conducted the alleged retaliatory actions himself, or instigated or condoned them.  Additionally, the only conduct directly attributed to Greene—that, at some point after October 2008, Greene told Thomas that a former PHA employee whom Thomas had terminated had threatened to assault Thomas—does not

---

[33] Evancho v. Fisher,  423 F.3d 347, 353 (3d Cir. 2005) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).

[34] Id.

constitute conduct sufficient to deter a person of ordinary firmness from exercising his constitutional rights.[35] Plaintiff does not even allege that the former employee was threatening Thomas at Greene's behest or because of the EEOC complaint or Thomas's knowledge of Greene's wrongdoing. Without some fact from which the Court can infer a relationship between the protected speech at issue and Greene's communication to Thomas, this comment would not deter her speech because Thomas has not alleged that it was in any way related to that speech.

And even if this single act involving Greene were sufficient to deter Thomas from speaking out about wrongdoing within the PHA, Thomas has not alleged facts sufficient to plead the third element of a retaliation claim against Greene—a causal link between the protected speech and the retaliatory conduct. To establish a causal connection between retaliatory conduct and a protected activity, a plaintiff may allege: "an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action;" a "pattern of antagonistic conduct" subsequent to the protected conduct; or facts that, as a whole, support an inference of causation.[36] Here, Plaintiff alleges that she filed her EEOC/PHRC complaint in February 2008 and resolved it in June 2008. The single act tied to Greene, occurring in or after October 2008,

---

[35] Greene argues that because this single event tied to him occurred in or around October 2008, Plaintiff's claim is barred by the two-year statutory limitations period that applies to Section 1983 actions. See Lake v. Arnold, 232 F.3d 360, 368 (3d Cir. 2000) (state personal injury limitations period applies to federal civil rights actions); 42 Pa. Cons. Stat. Ann. § 5524(2). The Court need not resolve this question because, until Thomas adequately alleges facts sufficient to connect the series of harassing events to Greene, it cannot determine whether the claim is time-barred. See Morris v. Phila. Hous. Auth., No. 10-5431, 2011 WL 3273475, at *7 (E.D. Pa. July 29, 2011) (in a § 1983 action based on multiple acts, "aggregated acts—those that are not individually actionable—may occur at any time so long as they are linked in a pattern of actions which continue into the applicable limitations period") (citing O'Connor v. City of Newark, 440 F.3d 125, 126–27 (3d Cir.2006)).

[36] Lauren W. v. Deflaminis, 480 F.3d 259, 267 (3d Cir. 2007); see also Schlegel v. Koteski, 307 F. App'x 657, 661–62 (3d Cir. 2009).

does not presents unusually suggestive temporal proximity.[37] Nor has Plaintiff alleged a pattern of antagonistic conduct attributed to Greene occurring after the filing or resolution of her EEOC/PHRC matter but before Greene's October 2008 communication with her. Accordingly, because Thomas has not alleged facts from which it can be inferred that Greene directed or knew of and acquiesced to the alleged retaliatory acts, nor a causal link between her speech and the single act tied to Greene, her Section 1983 claim against Greene in his individual capacity must be dismissed.[38]

### 2. *Official Capacity Claim*

Finally, Plaintiff has not alleged sufficient facts to state a Section 1983 claim against Greene in his official capacity. An official capacity suit is a suit against the government agency employing that defendant.[39] Because there is no respondeat superior liability,[40] to recover against a municipality under Section 1983, a plaintiff must allege the constitutional violation "implements or executes a policy, regulation, or decision officially adopted by the governing

---

[37] See McCann v. Astrue, 293 F. App'x 848, 852 (3d Cir. 2008) (standing alone, alleged retaliatory act occurring 5 months after plaintiff filed EEO complaint insufficient); LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 233 (3d Cir. 2007) (3 months insufficient for causation); Gaston v. U.S. Postal Serv., Office of Inspector Gen., No. 05-5286, 2008 WL 2682850, at *3 (D.N.J. July 2, 2008) (4 months insufficient for causation).

[38] Greene argues that the Section 1983 claim must be dismissed because Thomas has failed to plead specific conduct by Greene sufficient to overcome Greene's qualified immunity. As the Court will dismiss the Section 1983 claim for its pleading deficiencies, it need not address the qualified immunity defense. The Court notes, however, that Thomas must replead sufficient detail to permit the Court to evaluate, at an early stage of the litigation, whether the alleged transgression here violated clearly established constitutional rights of which a reasonable person should have known. See Independence Twp., 463 F.3d at 299–301.

[39] See Kentucky v. Graham, 473 U.S. 159, 165–66 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real part in interest is the entity.").

[40] Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

body or informally adopted by custom."[41] A policy may be established when a "decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action issues an official proclamation, policy, or edict," or by custom when practices, though not official policy or law, are "so permanently and well-settled as to virtually constitute law."[42] To adequately plead "custom," a plaintiff must plead facts from which it can be inferred that the decisionmaker knew or acquiesced to the practices.[43] Additionally, municipal liability may arise for failure to adequately train or supervise employees "where the need for more or different training is obvious, and inadequacy very likely to result in violation of constitutional rights," such that the failure amounts to deliberate indifference to the rights of those with whom employees will come into contact.[44]

Here, Thomas has pleaded no facts that would, if proven, establish any policy at all, whether adopted formally or by custom. Plaintiff makes only boilerplate allegations as to policy and custom: "Defendant Carl Greene is liable . . . as the decision maker was permitted to continue and condone a long-standing policy, practice and custom" of violating employees and former employees' First Amendment rights, of retaliating against them for exercising those rights, and of failing to adequately sanction and train employees, and "established a policy whereby [he instigated and condoned] a campaign of retaliatory action."[45] This is precisely the

---

[41] McTernan v. City of York, Pa., 564 F.3d 636, 657 (3d Cir. 2009) (quotations omitted) (citing Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir.1996)).

[42] Id. at 658 (citations and quotations omitted).

[43] Id.

[44] Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999).

[45] Compl. ¶¶ 35–39.

-12-

type of "formulaic recitation" of the elements of a cause of action that courts must reject as insufficient.[46] Though a single decision by a policy maker can constitute a "policy" for purposes of municipal liability,[47] as noted, Plaintiff has not alleged facts supporting any involvement by Greene in the campaign of harassment beyond the single October 2008 contact, which, standing alone, does not rise to a constitutional violation. Nor does Thomas plead any facts that state a claim for municipal liability for failure to train or supervise; she has alleged no facts suggesting a history of employee mishandling of EEOC complaints or prior First Amendment violations against employees who report misconduct.[48] Accordingly, Thomas's Section 1983 claim against Greene in his official capacity, and thus as against PHA, must be dismissed.

### B. Counts III & IV

#### 1. *Count III: Intentional Interference with Contractual Relations*

Thomas alleges that Greene interfered with her contractual relations with her employer and a prospective employer. The elements of an intentional interference claim include: (1) an existing or prospective contractual relationship between the plaintiff and a third party; (2) the defendant's intent to harm the plaintiff by interfering with the existing relationship or preventing the prospective relationship from occurring; (3) the lack of privilege or justification for the interference; and (4) actual damages.[49]

---

[46] McTernan, 564 F.3d at 658–59.

[47] McGreevy v. Stroup, 413 F.3d 359, 367–68 (3d Cir. 2005) (noting "an official with policymaking authority can create official policy, even by rendering a single decision").

[48] See Carter, 181 F.3d at 357 (history of prior violations may support finding of deliberate indifference).

[49] Walnut Street Assocs., Inc. v. Brokerage Concepts, Inc., 982 A.2d 94, 98 (Pa. Super. Ct. 2009); Phillips v. Selig, 959 A.2d 420, 428 (Pa. Super. Ct. 2008) (citing Thompson Coal Co. v. Pike Coal

Thomas alleges three facts to support this claim, none of which are sufficient to make an intentional interference with contractual relationship claim against Greene plausible. First, she alleges that when she was working for a local attorney, the attorney "received a call from a PHA Manager who asked if he could come to the office to discuss an issue," and that because the call made her fearful for her safety, she left the position.[50] Though Thomas alleges an existing employment relationship, she alleges no facts about the content of that communication and whether it had anything to do with Thomas at all, the identity of the PHA manager or whether the manager's identity was unknown and why. Second, Thomas alleges that she interviewed for a position with an unidentified employer in Cape May, New Jersey, but was told she would not be hired because she was "causing a big problem."[51] Thomas does not allege any contact between any PHA employee (much less Greene) and the prospective New Jersey employer, nor does she allege that the prospective employer indicated the "big problem" had anything to do with the PHA or Thomas's work there. Thomas also alleges that her mail was tampered with, including mail from the Department of Labor and Industry, but does not allege any facts regarding the content of the mail, who did the tampering, or why she believes Greene or the PHA employees he directed were responsible. Not only does Thomas fail to allege any direct involvement by Greene in these incidents, she fails to allege any conduct by *any* PHA employees at his direction that could have interfered with her relationships with current or prospective employers. Thomas's conclusory allegations that "Defendants took purposeful action specifically intended to harm" her

---

Co., 412 A.2d 466, 471 (Pa. 1979)).

[50] Compl. ¶ 17.

[51] Compl. ¶ 19.

existing or prospective relations, "lacked privilege or justification," "acted for the sole purpose of causing the specific harm," and "induced employers not to continue" the relationships,[52] do not cure these pleading deficiencies. Thus, nothing Thomas alleges makes it plausible to infer that Greene directly or indirectly, through other PHA employees, intentionally interfered with Thomas's existing or prospective contractual relations.

        2.        *Count IV: Intentional Infliction of Emotional Distress*

Thomas has not pleaded facts sufficient to state a claim against Greene for intentional infliction of emotional distress ("IIED"). To state this claim, "[t]he conduct must be so outrageous . . . and so extreme . . . as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in any civilized society."[53] Here, as discussed, Thomas has connected only a single factual allegation to Greene—that he communicated to her that another former employee had threatened to beat Thomas up. On the facts alleged, it is equally plausible that Greene was intending to warn Thomas rather than threaten her. And such conduct, standing alone, does not rise to the level of egregiousness required to support an IIED claim. Thomas alleges the other conduct was carried out by either Michael Williams (a *former* PHA employee), by unnamed "former and present employees," and by "someone" who vandalized her home. These allegations are not sufficient to allege a plausible IIED claim.

        3.        *Sovereign Immunity*

Greene also argues that the intentional torts alleged in Counts III and IV against him in

---

[52] Compl. ¶¶ 57–60.

[53] Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998) (quotations and citations omitted) (alteration in original).

his official and individual capacity are barred by sovereign immunity. The doctrine of sovereign immunity bars suits against states by its own citizens, as well as citizens from other states, unless the state has waived immunity.[54] The Commonwealth's Sovereign Immunity Act reaffirms Pennsylvania's sovereign immunity as against Commonwealth parties, and waives immunity for only certain negligence claims.[55] For purposes of that statute, the PHA and its employees are Commonwealth parties,[56] and the statute does not waive immunity for the intentional torts alleged here.[57] Thus, Counts III and IV must be dismissed as to Greene in his official capacity, and therefore Count IV must be dismissed as to the PHA as well.[58]

The Court does not, however, decide here whether Greene is immune from Counts III and IV in his *individual* capacity because it observes that the Commonwealth's sovereign immunity

---

[54] Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106 (1984); Edelman v. Jordan, 415 U.S. 651, 662–63 (1974).

[55] 1 Pa. Cons. Stat. Ann. § 2310; 42 Pa. Cons. Stat. Ann. §§ 8501, 8521–28. Section 8522 waives immunity for negligence claims relating to: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) the care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines.

Neither PHA nor Greene has asserted that it is immune for purposes of the Section 1983 claim, and thus the Court considers sovereign immunity for only the state law claims.

[56] City of Phila. v. Lead Indus. Ass'n, Inc., 994 F.2d 112, 118 (3d Cir. 1993) (citing Battle v. Phila. Hous. Auth., 594 A.2d 769, 771 (Pa. Super. Ct. 1991)).

[57] Holt v. Nw. Pa. Training P'ship Consortium, Inc., 694 A.2d 1134, 1140 (Pa. Commw. Ct. 1997); Boone v. Pa. Office of Vocational Rehab., 373 F. Supp. 2d 484, 495 (M.D. Pa. 2005) (citing Pickering v. Sacavage, 642 A.2d 555, 559–60 (1994)); see also 42 Pa. Cons. Stat. Ann. § 8521.

[58] A suit against a state official in his official capacity is a suit against the state entity itself. Kentucky v. Graham, 473 U.S. at 165–66. Though Thomas voluntarily withdrew Count III as to PHA and the PHA did not move to dismiss Count IV, as Count IV cannot lie against Greene in his official capacity, the Court must dismiss Count IV as against the PHA as barred by sovereign immunity. Cf. Walker v. Phila. Hous. Auth., No. 08-5592, 2009 WL 3055389, at*2 (E.D. Pa.2009) (because § 1983 claim is dismissed against the PHA, it cannot prevail against PHA officer in his official capacity).

statute protects Commonwealth employees only to the extent that they are "acting within the scope of their duties."[59] Protected conduct "is of a kind and nature that the employee is employed to perform; it occurs substantially within the authorized time and space limits; [and] it is actuated, at least in part, by a purpose to serve the employer."[60] Because of Thomas's pleading deficiencies, the Court will grant her leave to amend her Complaint, and will not determine now whether sovereign immunity bars Counts III and IV against Greene in his individual capacity.

## IV. CONCLUSION

For the foregoing reasons, Count I as against Greene, in his official and individual capacity, and as against the PHA, is dismissed without prejudice. Counts III and IV are dismissed with prejudice as against Greene in his official capacity because Commonwealth parties are immune from intentional tort claims, and Count IV is dismissed with prejudice as against PHA for the same reason. Counts III and IV as against Greene in his individual capacity are dismissed without prejudice.

An appropriate Order follows.

---

[59] Larsen v. State Emp. Ret. Sys., 553 F. Supp. 2d 403, 420 (M.D. Pa. 2008) (citing *inter alia* Maute v. Frank, 657 A.2d 985, 986 (1995)); see also 1 Pa. Cons. Stat. Ann. § 2310; 42 Pa. Cons. Stat. Ann. §8501.

[60] Larsen, 553 F. Supp. 2d at 420 (citing Velykis v. Shannon, C.A., No. 06-0124, 2006 WL 3098025, at *3-4 (M.D. Pa. Oct.30, 2006)).